UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY K.,[1]

                                    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

DECISION & ORDER

21-CV-6162MWP

## PRELIMINARY STATEMENT

Plaintiff Gary K. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.       Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.  **ALJ's Decision**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity between January 1, 2014, the alleged onset date, and December 31, 2015, his date last insured. (Tr. 20).[2] At step two, the ALJ concluded that through the date last insured plaintiff had the severe impairment of anxiety. (*Id.*). At step three, the ALJ determined that prior to the date last insured plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 20-22). With respect to plaintiff's mental limitations, the ALJ found that he suffered from mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing himself, and moderate limitations in concentrating, persisting, or maintaining pace. (*Id.*).

The ALJ concluded that through December 31, 2015, the date last insured, plaintiff retained the RFC to perform the full range of work at all exertional levels with several nonexertional limitations. (Tr. 22-25). Specifically, plaintiff was limited to simple, unskilled work involving only occasional changes in work setting and occasional simple, work-related

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

decisions (*Id.*). Plaintiff was able to work to meet daily goals, but would be unable to maintain hourly, machine-driven assembly line production rate. (*Id.*). Additionally, plaintiff was capable of interacting with the public, but not performing teamwork or tandem work, and needed to avoid hazards such as open waters or unprotected heights. (*Id.*).

At step four, the ALJ found that plaintiff was capable of performing past relevant work as a store laborer. (Tr. 25-26). Accordingly, the ALJ found that plaintiff was not disabled prior to December 31, 2015, his date last insured. (*Id.*).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 8-1). Plaintiff argues that the ALJ improperly determined that a 2015 opinion from plaintiff's mental health treating providers was ambiguous and inconsistent and thus not persuasive; plaintiff maintains that the ALJ erroneously reached this determination without first attempting to recontact those providers for clarification. (Docket ## 8-1 at 13-18; 12 at 2-3). Next, plaintiff maintains that the ALJ failed to adequately develop the record regarding the onset date of his physical impairments. (Docket # 8-1 at 20-23).

### IV.     Analysis

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding." *Martello v. Astrue*, 2013 WL 1337311, *3

(W.D.N.Y. 2013). Given the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386). Accordingly, before determining whether the ALJ's conclusions are supported by substantial evidence, a court must first evaluate whether the claimant was provided a full hearing "in accordance with the beneficent purposes of the [Social Security] Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Archbald v. Colvin*, 2015 WL 7294555, *3 (E.D.N.Y. 2015) ("[t]he reviewing court must ensure that 'all of the relevant facts [are] sufficiently developed and considered'") (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010)). The fact that a claimant is represented during the administrative hearing does not relieve the ALJ of his duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("it is the well-established rule in our circuit" that such a duty exists "[e]ven when a claimant is represented by counsel"). On the other hand, where the record contains no obvious gaps and the ALJ possesses a "complete medical history," no additional efforts by the ALJ to further develop the record are required. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

    For the reasons explained below, I agree with plaintiff that remand for further proceedings is warranted, although not for the precise reasons advanced by plaintiff. Review of the record demonstrates that during the hearing the ALJ perceived a gap in the record, which plaintiff endeavored to fill with his post-hearing submissions. Unfortunately, it is not clear that the ALJ appreciated that plaintiff did provide the information requested by the ALJ – a medical opinion from his treating mental health counselor Stephanie Avagliano, LMHC, identifying

6

when plaintiff's mental impairments began to cause significant work-related limitations.  Rather, as a result of the provider's name change during the treatment period, the ALJ apparently misunderstood that the author of the opinion was indeed plaintiff's longstanding mental health provider.  Because I find that such misapprehension could have affected the ALJ's determination, remand is warranted

Review of the record demonstrates that by December 2019, the time of the administrative hearing before the ALJ, several medical sources had opined that plaintiff's mental impairments rendered him incapable of engaging in work activities on a sustained basis.  For example, on February 1, 2018, plaintiff's treating psychiatric nurse practitioner, Andrew Cyrus Marcy, PMHNP-BC, who had been treating plaintiff for several months, opined that plaintiff "would struggle in a professional work environment."  (Tr. 821-29).  According to Marcy, plaintiff had difficulty in group settings due to "his anxiety and poor interpersonal skills," and his "tangential and perseverative thought process would interfere with [his] ability to learn and retain basic job functions."  (*Id.*).  Marcy indicated that plaintiff would have difficulty interacting with supervisors and peers due to his obsessions and compulsions and that his preservative thought process would "greatly interfere with sustained concentration."  (*Id.*).

On April 21, 2018, state non-examining consultant O. Austin-Small reviewed plaintiff's medical records, including the February 1, 2018 notes authored by Marcy, and opined that "[d]ue to [his] markedly poor adaptive and social functioning, [plaintiff] meets [Listing] 12.06AB."  (Tr. 836-38).  Although concluding that plaintiff's mental condition rendered him currently disabled, Austin-Small nevertheless opined that prior to December 31, 2015, plaintiff's date last insured, his mental impairments were nonsevere.  (Tr. 118).

7

On October 31, 2019, plaintiff's mental health therapist, Stephanie Avagliano, LMHC, completed a medical source statement assessing plaintiff's functioning (the "2019 opinion"). (Tr. 1424-26). She reported that plaintiff had poor communications skills and difficulty maintaining attention and concentration due to his ruminative thought process. (*Id.*). Avagliano opined that he would have extreme limitations in his ability to carry out complex instructions and to make complex work-related decisions, and marked limitations in his ability to understand and remember complex instructions and to make simple work-related decisions, and to respond appropriately to usual work situations and changes in a routine work setting. (*Id.*). Additionally, she felt he suffered from moderate limitations in his ability to understand, remember, and carry out simple instructions, and mild limitations in his ability to interact with the public, supervisors, and coworkers. (*Id.*). Avagliano's report was cosigned by plaintiff's treating psychiatrist Muhammad Dawood, MD. (*Id.*).

During the hearing, the ALJ, who recognized that a determination whether plaintiff's mental impairments caused significant limitations prior to his date last insured could be dispositive of his claim, identified a perceived gap in the record with respect to when plaintiff's mental impairments became sufficiently limiting that plaintiff was incapable of engaging in work. (Tr. 92). The ALJ acknowledged the marked and moderate limitations assessed by Avagliano, but suggested that Avagliano's 2019 opinion could not support a favorable determination because it was rendered long after the date last insured and did not indicate when plaintiff began to suffer from those limitations. (*Id.*). Specifically, the ALJ stated:

> What [Avagliano] is not telling me is[] when that started. So, I need you to go out and ask her again to review all of your medical treatments, she's been treating you a long time . . . . So I need her to tell me, when did it become an impairment that you were working with, to an impairment that proved you could [no] longer work, okay? So, I . . . need you to do some additional work . . . .

8

> And if we need to have an additional hearing on those points, we can do that, or if you submit the records to me in a way that . . . persuades me, I can go ahead and make a favorable decision.

(*Id.*).

Following the hearing, through two letters dated December 30, 2019, plaintiff requested that his disability onset date be amended to February 3, 2015, and submitted additional evidence supporting his allegation that he had become disabled as of that date, including an April 10, 2015 medical source statement (the "2015 opinion") completed by Stephanie DeRico, who was at that time a mental health counseling student being supervised by medical staff at Unity Behavioral Health, where plaintiff had been receiving ongoing mental health treatment since February 3, 2015. (Tr. 312-13, 316, 1469-72). The statement was cosigned by DeRico's supervisor Michael Tursi, LMHC, and plaintiff's treating psychiatrist Prakash P. Reddy, MD.[3] (Tr. 1469-72).

The record demonstrates that Stephanie DeRico and Stephanie Avagliano are the same provider. According to the medical treatment notes, plaintiff first met with Stephanie DeRico in February 2015, when she was mental health counseling student under supervision. (Tr. 667-71). The records reflect that DeRico continued to provide treatment to plaintiff after she became a licensed mental health counselor. (Tr. 539-772, 1130-1249). In approximately August 2019, the records reflect that DeRico changed her last name to Avagliano. (Tr. 1203). That this is the same provider is confirmed by plaintiff's testimony during the December 2019 hearing that he had been treating with Avagliano since February 2015. (Tr. 57-58).

---

[3] In their submissions, the parties refer to this as an opinion authored by Reddy. (Docket ## 8-1 at 12-18; 10 at 25-30). However, review of the document suggests that it was completed by DeRico and cosigned by Reddy and Tursi. (Tr. 1469-72).

In her 2015 opinion, Avagliano assessed that plaintiff was very limited in his ability to follow, understand, and remember simple instructions and directions, and to maintain attention and concentration. (Tr. 1470-72). She also assessed that he was moderately limited in his ability to perform simple and complex tasks independently and to perform low stress and simple tasks. (*Id.*). According to Avagliano, plaintiff had no limitations in his ability to regularly attend to a routine and maintain a schedule or to maintain basic standards of hygiene and grooming. (*Id.*).

In her decision, the ALJ considered the 2015 opinion, although it is not clear that the ALJ recognized that it had been prepared by Avagliano. Rather, the ALJ described the opinion as being completed by "counseling students working in conjunction with Dr. Reddy." (Tr. 25). The ALJ determined that the opinion was "not entirely persuasive because it does not provide support for any conclusions, is internally vague, and is not consistent with the medical evidence of record." (*Id.*). With respect to Avagliano's 2019 opinion, the ALJ determined it was not persuasive because it was "completed far after the date last insured." (*Id.*).

Had the ALJ appreciated that the 2015 opinion had been completed by Avagliano, that understanding might well have altered her determination regarding the persuasiveness of Avagliano's 2019 opinion. Both opinions assess that plaintiff suffered from substantial limitations in his ability to engage in the mental requirements of simple and complex work. (*Compare* Tr. 1424-26 *with* Tr. 1469-72). Significantly, the 2015 opinion is the only medical opinion in the record by a treating provider that was rendered before the date last insured. Indeed, the 2015 opinion appears to provide the specific information requested by the ALJ – the date by which, in Avagliano's view, plaintiff's mental impairment rendered him incapable of performing work-related functions – and thus may have altered the ALJ's determination that the

2019 opinion was not persuasive because it had been rendered so long after the date last insured. *See, e.g., Bantle v. Colvin*, 2017 WL 726874, *9 (W.D.N.Y. 2017) ("[a]lthough it is unclear whether review of [mental health therapist's] notes would have persuaded the ALJ to give greater weight to [his] opinion, the notes would have eliminated the stated basis on which the ALJ discounted [his] opinion – that the opinion could not be credited in the absence of the notes").

Moreover, rather than finding the 2015 opinion vague, unsupported, and inconsistent with the record, the ALJ may have found it more persuasive or may have recontacted Avagliano for additional information since she was still providing treatment to plaintiff. Likewise, the ALJ might have altered her determination regarding the relative persuasiveness of the opinions rendered by the non-examining state consultants, specifically, her finding that their assessments were "persuasive to th[e] extent" that they did not suggest "any additional restrictions" beyond those in the RFC (*see* Tr. 24). *See, e.g., Robert R. v. Kijakazi*, 2022 WL 1607022, *4 (W.D.N.Y. 2022) ("had the ALJ considered [the opinions] in the first instance, it might have altered his conclusions as to the persuasiveness of the medical opinions he *did* consider"); *Tosti v. Colvin*, 2016 WL 4607410, *8 (W.D.N.Y. 2016) ("had the ALJ been aware of the assessments from three of [plaintiff's] medical providers, . . . the ALJ might have altered the relative weights he accorded to [the opinions he did consider]"). Alteration of the ALJ's conclusions regarding the persuasiveness of the mental health opinions might also have altered the ALJ's RFC determination and could have affected her ultimate determination on disability. *See, e.g., Garrett W. v. Comm'r of Soc. Sec.*, 2021 WL 821833, *6 (W.D.N.Y. 2021) ("[i]t is possible that consideration of the opinions authored by [the physicians] . . . may have

11

altered the relative weights that the ALJ gave the [other opinions of record], potentially altering the outcome of this case").

That the ALJ may not have fully considered plaintiff's post-hearing submissions or appreciated that they were intended to address the gap identified by the ALJ during the hearing is underscored by the ALJ's failure to discuss in her decision plaintiff's post-hearing request to amend his onset date (which was made in plaintiff's post-hearing submissions).  Of course, on remand, the ALJ still may conclude that the knowledge that Avagliano authored the 2015 opinion does not alter her analysis.  Because it is unclear, however, whether the ALJ appreciated that plaintiff's longtime mental health counselor issued both the 2015 and 2019 opinions, the appropriate course is to remand for further proceedings, especially because the ALJ specifically requested that plaintiff submit information from Avagliano assessing plaintiff's limitations prior to the date last insured.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

<i>s/Marian W. Payson</i><br>
MARIAN W. PAYSON<br>
United States Magistrate Judge

Dated:  Rochester, New York
        August 17, 2023